UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SCOTT FULLER,

            Plaintiff,                    6:05-CV-219
                                                      (NAM/DEP)

        vs.

CSX TRANSPORTATION, INC. and GENERAL
CHEMICAL CORPORATION,

            Defendants.
_____

**APPEARANCES**                              **OF COUNSEL:**

Cahill Goetsch & Maurer, P.C.           Ira M. Maurer, Esq.
1025 Westchester Avenue
White Plains, New York 10604
*Attorney for Plaintiff*

McNamee Lochner Titus              Scott A. Barbour, Esq.
 & Williams, P.C.
677 Broadway
Albany, New York 12207-2503
*Attorney for Defendant CSX Transportation, Inc.*

Hancock & Estabrook, L.L.P.          Maureen E. Maney, Esq.
1500 Tower I, P.O. Box 4976            Mark J. Schulte, Esq.
Syracuse, New York 13221-4976
*Attorneys for Defendant General Chemical Corp.*

**Norman A. Mordue, Chief U.S. District Judge**:

## MEMORANDUM-DECISION AND ORDER

I.    INTRODUCTION

      Plaintiff, an employee of defendant CSX Transportation, Inc., commenced this action

alleging that he was injured when he slipped and fell on a railroad siding on the premises of

defendant General Chemical Corporation. Plaintiff sued CSX pursuant to the Federal Employers'

Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, while his claims against General Chemical were premised upon a theory of common law negligence. Co-defendants CSX and General Chemical asserted cross-claims against each other as follows: 1) CSX asserted one cross-claim based on contractual indemnification and a second based on common law indemnity, apportionment and contribution; and 2) General Chemical asserted a single cross-claim against CSX on the ground of common law indemnity, apportionment and contribution. In September 2006, plaintiff agreed to settle his claims against CSX for the lump sum payment of $50,000.00. Following his agreement to settle with CSX, the defendants have not been able to agree on resolution of their claims against each other. The motions presently pending before the Court relate to: 1) dismissal of plaintiff's claim against defendant CSX; 2) disposition of the various cross-claims asserted by defendants; and 3) General Chemical's request for leave to amend its answer to CSX's cross-claims.

II.     FACTUAL BACKGROUND

The parties agree that plaintiff's accident occurred in the course of his duties as a freight conductor with defendant CSX. Plaintiff was injured on February 18, 2004, while attempting to make an air hose connection between two tank cars on a siding owned by defendant General Chemical in Solvay, New York. General Chemical was required to own and maintain this sidetrack for the purpose of receiving freight via railcars which travel on the CSX main track located alongside General Chemical's plant. Defendants had entered into a contract entitled a "Private Sidetrack Agreement" in July 2002 concerning their duties and responsibilities in the area of the sidetrack. The Agreement divided the sidetrack into two parts: 1) the area owned by General Chemical ("Industry's Segment"); and 2) the area owned by CSX ("Railroad's

2

Segment"). In a section entitled "Maintenance," the Agreement provides:

> 4.1    Railroad and Industry, at their own expense, shall inspect, maintain and renew their respective Segments of the Sidetrack: (A) in accordance with the Federal Railroad Administration Track Safety Standards and (B) in a safe condition consistent with the operating circumstances and amount of use.  Additionally, both Industry and Railroad agree to keep their respective Segments free from debris, weeds, potholes, ice or snow . . ..  Railroad shall have the right, but not the duty to inspect Industry's Segment.

Agreement ¶ 4.  There is no dispute that plaintiff's alleged fall occurred on the "Industry" segment of the sidetrack.

CSX agreed to settle plaintiff's injury claim for the sum of $50,000.00.  According to the terms of plaintiff's settlement with defendant CSX, he agreed that he would not "commence or prosecute, or permit to be commenced or prosecuted" any action for damages against CSX arising from the claims released in the settlement agreement.  Also, as part of settling with his employer, plaintiff agreed not to return to work.  Upon plaintiff's agreement to a partial settlement of his claims, counsel for plaintiff circulated a stipulation of discontinuance concerning discontinuance of plaintiff's first cause of action against defendant CSX.  There was no language in said stipulation concerning the separate matter of the defendants' respective cross-claims.

Counsel for defendant General Chemical refused to execute the stipulation of discontinuance on the ground that the terms of the settlement with defendant CSX would prevent plaintiff from testifying in defense of General Chemical on CSX's cross-claim for contractual indemnification.  Indeed, General Chemical contends that plaintiff is its primary fact witness insofar as establishing that it was defendant CSX's negligence which caused and/or contributed to plaintiff's accident.  Defendant CSX then moved for summary judgment dismissing plaintiff's claims against it based on the settlement agreement and dismissing General Chemical's cross-

3

claim for common law contribution and apportionment pursuant to General Obligations Law § 15-108(b). Based upon its assertion that the negligence of CSX contributed in whole or part to causing plaintiff's accident, General Chemical moved for summary judgment dismissing CSX's cross-claims. General Chemical also moved to amend its answers to both plaintiff's complaint and the cross-claims of CSX. Specifically, General Chemical seeks permission to amend its responsive pleadings to assert the defense that New York General Obligations Law § 15-108(c) bars the cross-claims of defendant CSX.

In response to General Chemical's motion for summary judgment dismissing its cross-claims and for leave to amend its answers to both plaintiff's complaint and CSX's cross-claims, CSX has: 1) agreed that its cross-claim for common law contribution and apportionment against General Chemical should be dismissed pursuant to General Obligations Law § 15-108(c); 2) taken no position on General Chemical's motion to file an amended answer to plaintiff's complaint; 3) opposed General Chemical's motion to file an amended answer to its cross-claims; and 4) moved for summary judgment on its claim for contractual indemnification.

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With

4

respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.

Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *see Ramseur v. Chase Manhattan Bank*, 865 F.2d Cir. 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d Cir. 243, 249 (2d Cir. 1985).  It is with these considerations in mind that the Court addresses the parties' motions for summary judgment.

B.       Substantive Legal Standard

In the wake of plaintiff's settlement with defendant CSX, the defendants agree that their respective cross-claims against each other are governed by the terms of their contract, which insofar as liability and insurance, provided in pertinent part as follows:

> 11.1    Except as otherwise provided herein, any and all damages, claims, demands, causes of action suits, expenses (including attorney's fees and costs), judgments and interest whatsoever (hereinafter collectively "Losses") in connection with injury or death of any person or persons whomsoever (including employees, invitees and agents of the parties hereto) or loss or damage to any property whatsoever arising out of or resulting directly or indirectly from the construction, maintenance, repair, use, alteration, operation or removal of the Sidetrack shall be divided between the parties as follows:
>
> (A)    Each party shall indemnify and hold the other party harmless from all Losses arising from the indemnifying party's willful or gross negligence, its sole negligence and/or its joint or concurring negligence with a third party.
>
> (B)    The parties agree to jointly defend and bear equally between them all Losses arising from their joint or concurring

5

>   negligence.
>
>   (C) Notwithstanding the foregoing, and irrespective of the sole, joint or concurring negligence of Railroad, Industry acknowledges that is solely responsible for and agrees to indemnify and save Railroad harmless from all Losses arising from: (i) the failure of Industry to properly maintain its Segment of the Sidetrack . . ..

Agreement ¶ 11. The rights and obligations of the parties following settlement are also governed by N.Y. Gen Oblig. Law § 15-108:

>   (a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
>
>   (b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
>
>   (c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

C.   <u>Defendants' Cross-Claims for Contribution and/or Apportionment</u>

In resolving defendants' cross-claims, the Court is mindful of the "important substantive distinctions between contribution [as referenced in § 15-108] and indemnity." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24 (1985):

>   Basically, in contribution the loss is distributed among tort-feasors, by requiring joint tort-feasors to pay a proportionate share of the loss to one who has discharged their joint liability, while in indemnity the

6

> party held legally liable shifts the entire loss to another. Contribution arises automatically when certain factors are present and does not require any kind of agreement between or among the wrongdoers. Indemnity, on the other hand, arises out of a contract which may be express or may be implied in law "to prevent a result which is regarded as unjust or unsatisfactory." Implied indemnity is frequently employed in favor of one who is vicariously liable for the tort of another, but the principle is not so limited and has been invoked in other contexts as well. Nonetheless, "an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them."
>
> The distinctions between contribution and indemnity take on added importance in settlement negotiations. In order to remove a disincentive to settlement, the Legislature amended General Obligations Law § 15-108 to provide that a settling tort-feasor can neither obtain, nor be liable for, a contribution claim. Inasmuch as an entire shifting of the loss to another would not act as a disincentive to settlement or necessitate an examination of relative degrees of fault, indemnification claims are not barred. A party who has settled and seeks what it characterizes as indemnification thus must show that it may not be held responsible in any degree. The statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification.

*Id.* at 24-25 (internal citations omitted).

Defendant CSX concedes that based on its settlement with plaintiff, the clear language of § 15-108(c) bars its cross-claim for contribution against General Chemical. CSX maintains, however, that its second cross-claim for indemnity still lies against General Chemical. For its part, General Chemical does not concede that its cross-claim for common law contribution and/or apportionment is extinguished by virtue of the settlement agreement in spite of the explicit language of Gen Oblig. Law § 15-108(b). Notably, in his "qualified" affidavit opposing defendant CSX's motion to dismiss General Chemical's cross-claim for common law contribution, counsel for General Chemical does not dispute the operation of Gen Oblig. Law § 15-108(b) as fatal to its contribution claim. The operation of § 15-108 being well-settled, the

7

Court must dismiss both General Chemical's sole cross-claim for common law contribution and the common law contribution cross-claim of CSX.

D.  Defendant General Chemical's Motion to Dismiss Contractual Indemnification Claim

General Chemical cross-moves for dismissal of CSX's cross-claim for contractual indemnification.  General Chemical asserts that CSX had a non-delegable duty under FELA to provide plaintiff with a safe place to work, *see Syverson v. Consol. Rail Corp.,* 19 F.3d 824, 826 (2d Cir. 1994) ("A railroad may be liable under FELA for failure to provide a safe workplace 'when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.' ") (quoting *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84-85 (2d Cir. 1989)), and that CSX failed to train plaintiff to report unsafe conditions and exercise his right of refusal insofar as working in unsafe conditions.  According to General Chemical, the alleged negligence of CSX in causing or contributing to plaintiff's accident bars it as a matter of law from pursuing its cross-claim for contractual indemnification.

The Court disagrees.  It is well settled that: (1) parties may obtain contractual indemnity from liability-even where such liability is incurred in whole or in part through their own fault-through express, "unequivocal" agreements to that effect; and (2) Section 15-108(c)'s contribution bar does not apply to a settling defendant's claim for indemnity (as distinct from contribution) under an express contractual provision that shifts liability in its entirety to another party.  *Gibbs-Alfano v. Burton*, 281 F. 3d 12, 20 (2d Cir. 2002) (internal citations omitted).  Section 11.1(C) of defendants' Sidetrack Agreement is just such an "unequivocal" agreement. The provision states unambiguously that **"irrespective of the sole, joint or concurring negligence of [CSX ]**, [General Chemical] acknowledges it is solely responsible for and agrees to indemnify and save [CSX] harmless from all losses arising from . . . the failure of [General

8

Chemical] to properly maintain its Segment of the Sidetrack." (emphasis added).  Thus, it is clear that the alleged joint or even sole negligence of CSX under FELA is immaterial to its right to seek indemnification from General Chemical under the contract for losses arising specifically from the failure of General Chemical to maintain its portion of the sidetrack.  While the circumstances under which General Chemical agreed to indemnify CSX are not as "broad" and "all-encompassing" as in the indemnification clause at issue in *Gibbs-Alfano*, 281 F. 3d at 119, the explicit language of the contract reveals General Chemical's "unmistakeable intent" to indemnify CSX for its own negligence.  *Id.*  The arguments tendered by General Chemical concerning a party's own negligence as a bar to a right of indemnity relate to common law indemnification claims.  *See id.* (citing *Rosado v. Proctor & Schwartz, Inc*., 66 N.Y.2d 21, 25 (1985) ("common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff").  The present case undisputedly concerns a written agreement that preserves a right of contractual indemnification in spite of any claimed negligence on the part of the party seeking reimbursement.

Contrary to the argument of General Chemical, there is nothing ambiguous about the contractual indemnity provision of the parties' sidetrack agreement.  Indeed, Subsections A and C of Section 11.1 do not contradict each other in connection with how losses are to be apportioned.  Rather, these are mutually exclusive alternative provisions that apply under specific factual scenarios.  Subsection A applies in the case of "gross" or "willful" negligence on the part of either party; Subsection B is an "equal shares" provision which applies upon proof that the parties were jointly or concurrently negligent; and the full indemnity provision in Subsection C applies when the loss "was produced by the primary negligence of the siding owner, and the carrier's only fault lay in the fact that it had a nondelegable duty to provide a safe place to work for its

9

employees." *Wanser v. Long Island R.R. Co.*, 238 F. 2d 467, 470 (2d Cir. 1956) *cert. denied*, 353 U.S. 911 (1957). "These contracts are made in contemplation of the railroad's liability under the FELA . . . [and their] obvious purpose . . . is to provide for indemnification of the railroad when the industry's act or omission violates the railroad's nondelegable duty to furnish a safe place for its employees to work." *Burlington Northern, Inc. v. Hughes Bros., Inc.*, 671 F. 2d 279, 284 (8th Cir. 1982).

Thus, there is no ambiguity about **whether** the contract provides that General Chemical will indemnify CSX for its own nonfeasance in the case of a loss caused by General Chemical's failure to maintain its portion of the sidetrack; it is simply a question of **how much** reimbursement CSX can obtain. *See Hendershot v. Consol. Rail Corp.*, 1998 WL 240495, *3 (S.D.N.Y. May 12, 1998) (to trigger equal shares provision of indemnity agreement, industry was required to show more than mere breach by railroad of its nondelegable duty under FELA) (citing *Illinois Cent. Gulf R.R. Co. v. Crown Zellerbach Corp.*, 859 F.2d 386, 390-91 (5th Cir. 1988) ("mere liability under FELA does not support the application of the equal-shares provision"); *Missouri Pac. R.R. Co. v. Int'l Paper Co.*, 618 F.2d 492, 497 (8th Cir. 1980) (affirming award of full indemnity to railroad where railroad's liability under sidetrack agreement arose solely from its nondelegable duty to provide safe workplace)). Accordingly, defendant General Chemical's motion to dismiss the contractual indemnification cross-claim of defendant CSX as a matter of law based on the railroad's non-delegable duty under FELA must be denied.

E.     Defendant CSX's Motion for Summary Judgment on Indemnity by General Chemical

CSX contends that Section 11.1(C) requires General Chemical to indemnify CSX for the total amount of its payment to plaintiff. It is undisputed that Section 11.1(C) of the Sidetrack Agreement states that General Chemical will indemnify CSX for losses caused by its "failure to

10

properly maintain its segment of the sidetrack." It is also undisputed that at the time of his accident, while attempting to connect air hoses from two tank cars, plaintiff was working in the area of the sidetrack owned and maintained by General Chemical. What is not clear from the record is what caused plaintiff's accident. CSX asserts that plaintiff slipped and fell because General Chemical's failed to maintain its portion of the sidetrack as contemplated by the agreement. General Chemical contends that CSX neglected to provide plaintiff with safe working conditions by failing to train him properly or inspect the area where plaintiff was assigned to work.

When he testified about the accident, plaintiff stated he was advised in the course of his training by CSX that he had "some element of control over whether [he] went into a customer's siding" to complete his work. It was plaintiff's understanding that the "element of control" he was "in a position to exercise" was "mak[ing] sure" a siding was "a safe environment." For example, in the winter, plaintiff stated that it was his expectation that when he went to a customers' siding, the switches should be cleared of ice and snow so that he could complete his work. If a switch in a customer's siding was not cleared, plaintiff's "custom and practice" was that he "wouldn't operate it." However, in response to questions by counsel for General Chemical, plaintiff also testified that he had never been told by CSX in the course of his training that he had the right and/or authority to refuse to perform work on or between tank cars at a customer's siding if he believed that conditions were such that completing the work would be unsafe. In fact, plaintiff testified that he was told working in "snow conditions" was "part of winter conditions in Upstate New York."

Plaintiff's supervisor, Michael MacDonald, testified that insofar as management at CSX was concerned, the company had a duty to provide plaintiff with a safe place to work and also

11

was obligated to inspect work locations where plaintiff performed his assigned duties, even if these locations were not on property owned by CSX. CSX also relied on its employees to inspect work areas on customers' property for unsafe conditions. After plaintiff's accident, MacDonald, prepared a report entitled "Key Factors Analysis" concerning the cause of the occurrence. In his report, MacDonald noted "Employee states while coupling air hoses, had some difficulty with stiff hoses and ice and snow between cars, caused him to slip and stuck his left arm." In a section of the report entitled "Corrective Actions/Action Plan," MacDonald listed four items:

>    1) Clear snow and ice from between cars;
>
>    2) Counsel employee about reporting conditions that need correction;
>
>    3) Conduct safety skills seminar when returned to work; and
>
>    4) Add air hose extension to [tank car]35372.

Ex. 13, attached to defendant General Chemical's motion papers. With regard to the fourth item, adding an air hose extension to the tank car, Mr. MacDonald testified:

> Well, Mr. Fuller said he had difficulty when he was coupling the air hoses that caused him to slip, so it could have been because of the room in between. And we thought by adding an extension [sic] would give him some more room . . .. It was determined that if we put an extension on the angle cock, and then attach the hose, it would allow you a little more room when you're coupling the hose, room between where the glad hands would be and the bottom of the coupler.

Ex. 12, p. 58, attached to defendant General Chemical's motion papers. Finally, during his deposition, MacDonald answered "Yes" to the question of whether "at any time" prior to plaintiff's accident, CSX was aware of complaints made by CSX personnel about snow and ice being present on the tracks at the General Chemical plant. *Id.*, at p. 23.

Biagio Vavala, who the Court assumes worked in a maintenance capacity for General Chemical, testified that starting in 1986, when the company first began getting service from CSX,

12

his understanding was that ¶ 4.1 of the contract required General Chemical to keep the switches on General Chemical's segment of the sidetrack oiled, cleaned and free of debris "so . . . there would be no hampering of throwing the switches."  Vavala stated that General Chemical performed these duties under the contract in both winter and summer.  No one from management at General Chemical explained to Vavala what ¶ 4.1 required concerning snow and ice removal in the sidetrack and Vavala admitted he had no legal training to interpret the contract.  Nevertheless, Valvala acknowledged he did not interpret the sidetrack agreement as requiring him to keep the gauge of the tracks clear or to keep the tracks themselves free of snow and ice.  The only time Vavala could remember anyone from General Chemical cleaning snow off the tracks was "maybe two or three occasions where it snowed a large amount, I'm going to say it was almost like a couple feet."

The only direct evidence in the record concerning the cause of plaintiff's accident appears in plaintiff's deposition transcript.  To wit, plaintiff averred that as he inspected the area where his accident occurred prior to attempting to connect the air hoses, he did not see any conditions which "gave [him] concern about [his] footing."  Rather, plaintiff testified that he "observed snow and ice above the height of the rail in between the gauge of the tracks," but nevertheless "felt [he] could perform the task."  Plaintiff testified that he was in a semi-crouched position with his right foot planted and left knee resting on ice inside the gauge of the track.  Plaintiff stated that the tip of his booted left foot was also resting on ice outside the gauge of the track.  In spite of the icy conditions, plaintiff believed the spikes on the bottom of his safety boots would be adequate to secure his footing while he attempted to make the hose connection.  The hose on the car to plaintiff's left was embedded about a foot into the accumulated snow which made it stiffer and "harder than normal" to connect to the hose on the right.  Before he was able to connect the hoses, however, plaintiff's left knee slipped to the right, followed by his left foot.  Plaintiff  then fell

13

over onto his left side, injuring his shoulder.

Based on this record, a jury could very well find that plaintiff's accident was caused by General Chemical's failure to remove ice and snow from the gauge of the tracks, thus triggering the indemnity clause of the sidetrack agreement. On the other hand, a jury might conclude reasonably that the accumulated ice and snow was not a factor in plaintiff's accident. Indeed, the presence of ice and snow on the tracks did not concern or dissuade plaintiff as he believed his spiked soles would be sufficient to maintain his footing. Thus, a jury could determine plaintiff might have safely performed his duties on the date in question but for another causative factor, such as the failure of CSX to equip its railcars with air hose extensions during winter conditions when connecting frozen hoses was difficult. Finally, even if the failure of General Chemical to maintain properly its segment of the sidetrack was a cause of plaintiff's injury, CSX might still be precluded from an award of full indemnity based on its alleged prior knowledge of complaints by employees about winter conditions on the sidetrack.

To wit, juries may preclude indemnitees from recovering full indemnity when they have "acquiesced in the condition that gave rise to the underlying liability." *Illinois Cent. Gulf R.R. Co.*, 859 F. 2d at 390. Under the doctrine of acquiescence, "mere knowledge of the dangerous condition does not bar full indemnity." *Id.* (citing *Burlington,* 671 F.2d at 286). Rather, the indemnitee's fault must be "serious enough and sufficiently distinct from" that of the indemnitor. *Id.* (citing *Pennsylvania R.R. Co. v. Erie Ave. Warehouse Co.*, 302 F.2d 843, 849 (3d Cir. 1962)). While mere liability under FELA does not support application of the equal-shares provision, a finding that the railroad was negligent according to common law standards will limit its recovery from the indemnitor to one-half of the underlying liability.[1] *See id.* at 391 (citing *Burlington*, 671

---

[1] This is not to say that the railroad's breach of the nondelegable duty under FELA can never result in a finding of joint or concurrent negligence, thus triggering the equal-shares provision of the

14

F.2d at 285; *Steed v. Cent. of Georgia Ry Co.*, 529 F.2d 833, 838 (5th Cir. 1976); *Colonial Stores, Inc. v. Cent. of Georgia Ry Co.*, 279 F.2d 777, 780 (5th Cir. 1960)). "[T]he question is not simply whether the railroad acquiesced in the dangerous condition, but whether, under the circumstances, the railroad's knowledge of the dangerous condition is of sufficient character and quality to show that it acted negligently."[2] *Id.* (citing *Burlington*, 671 F.2d at 286).

Whether plaintiff's injuries arose: 1) solely from the negligence of General Chemical; 2) solely from the acts or omissions of CSX; or 3) from the joint or concurring negligence of General Chemical and CSX is a question of fact for a jury; it cannot be decided by the Court on the current record. Based thereupon, the motion for summary judgment by defendant CSX on its cross-claim for contractual indemnity against defendant General Chemical must be denied.

F.      Dismissal of Plaintiff's Claim Against CSX under FELA

Defendant CSX having moved for dismissal of plaintiff's first cause of action against it by virtue of the settlement agreement, and no party having seriously opposed said request for relief and the Court finding no factual or legal basis in the record to deny this requested relief, the motion by CSX for dismissal of plaintiff's first cause of action must be granted.

G.      Cross-motions of General Chemical

Neither plaintiff nor defendant CSX opposes General Chemical's cross-motion to amend

---

indemnity contract. *Id.* (citing *Dery v. Wyer*, 265 F.2d 804, 809-10 (2d Cir.1959) ("on a finding of concurring negligence a proper construction of the agreement requires that the loss be equally borne"); *Wanser*, 238 F.2d at 470 (affirming finding of concurrent negligence where railroad's actions concurred with party's later acts of negligence in producing injury))., 

[2] For example, "acquiescence as established by a 'long continued awareness of a dangerous situation by the indemnitee without either taking any corrective measure or calling upon the indemnitor to do so' may constitute negligence." *Id.* (citing *Burlington,* 671 F.2d at 286; *Erie,* 302 F.2d at 848). "Length of time, however, is only one factor; in other circumstances, knowledge for a relatively short period of time may still constitute negligence." *Id.* (citing *Colonial Stores*, 279 F.2d at 779-80).

15

its answer to plaintiff's complaint.  Moreover, the Court discerns no factual or legal basis in the record to deny this requested relief.  Thus, the motion by General Chemical to amend its answer to plaintiff's complaint will be granted.

In connection with the cross-motion of General Chemical to amend its answer to defendant CSX's cross-claims, the Court notes that the first cross-claim by CSX for common law contribution, indemnity and apportionment has been dismissed.  To the extent General Chemical endeavors to raise a new defense to the remaining cross-claim on the basis of N.Y. Gen Oblig. Law § 15-108, said statute provides **no defense** to CSX's cross-claim under the sidetrack agreement as referenced above.  See *infra* Subsection III(C).  Moreover, the Court disagrees with the vaguely articulated assessment by General Chemical that it has somehow been prejudiced by plaintiff's settlement with CSX.  While Rule 15(a) of the Fed. R. Civ. P. provides that leave to amend a pleading "shall be freely given when justice so requires," one appropriate basis for denying leave to amend is that the proposed amendment is futile.  *See Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  Where, as here, there is no merit in the proposed amendment in General Chemical's answer to the cross-claim of CSX, leave to amend should be denied.

IV.    CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the motion by CSX to dismiss the sole cross-claim of General Chemical for common law contribution, indemnity and apportionment is GRANTED; and it is further

ORDERED that the motion by General Chemical to dismiss CSX's cross-claim for common law contribution, indemnity and apportionment is GRANTED; and it is further

ORDERED that the motion by General Chemical to dismiss CSX's cross-claim for contractual indemnification as a matter of law is DENIED; and it is further

ORDERED that the motion by CSX for summary judgment on its cross-claim for contractual indemnification is DENIED; and it is further

ORDERED that the motion by General Chemical for leave to file an amended answer to plaintiff's complaint is GRANTED; and it is further

ORDERED that the motion by General Chemical for leave to file an amended answer to CSX's cross-claim for contractual indemnification is DENIED.

IT IS SO ORDERED.

Date:   January 5, 2009

_____
Norman A. Mordue
Chief United States District Court Judge

17